Good morning, your honors. May I reserve three minutes for rebuttal? Yes. Matthew Nelson on behalf of the defendant, Sandra White. May it please the court, I will primarily address this morning the aggravated identity theft issue. This case presents the issue of what constitutes use of another's means of identification under the aggravated identity theft statute. Specifically, does the defendant use someone else's identity when she lies about her client's occupation? The court should answer this question, no, because such a lie does not use someone else's identity. And that is true whether the lie is told at the outset or it is told in documentation after the fact to corroborate the earlier lie. In neither case is it a use under this court's jurisprudence and interpretation of section 1028A. This court has concluded the term use cannot be so broadly applied as to social security number or other identification. Instead, this court looks to whether there has in fact been some sort of misappropriation, I suppose I'll characterize it as, of the person's identity. And so, for example, in this court's decision in Miller, there was no identity theft because the defendant lied about what other people had done. In Medlock, there was no identity theft because the defendant lied about the services that were provided and the customer's identities were not key to how and why the customers were transported. And in Lombard, a case that doesn't specifically address the issue of use but which was cited in the supplemental authority letter that was recently submitted by the government, the defendant lied about who he was. And in fact, that's a classic case of aggravated in Medlock was that Lombard is a case about the lawful authority aspect of the statute, not the use part of the statute. But why isn't it similar to create an ID saying that somebody is in the military when the person isn't in the military and then to use that ID in order to gain a benefit by defrauding an airline? Why isn't it similar to... To whatever you were relying on to say that this is not use. Why isn't it similar activity? In other words, why isn't this activity within the statute? It seems to me that you could make the argument that it is. And certainly the government has. We believe that it is not because here... Well, first let me start with the actual issue with regard to the identification documents. The identification documents, the fact that my client made false military identification documents as opposed to simply what she did initially, which was to send their names in and say that they were in the military. Under this statute, it makes no difference. The previous statute, under 1028, the act of making a false identification is significant. But under this statute, specifically subsection A1 of this statute, the act of making the false identification is irrelevant. It doesn't matter whether it's a false identification document or just simply writing the lie down in the course of sending the communication at issue here. But with regard to why it is that this is not use of a person's identity is because a lie about someone's occupation, where you're seeking airfare for someone who's actually going to travel and actually going to pay for the airfare, but the lie about their occupation, what they do, is not any different than the lie that was told in Miller with regard to what other people had done. Whether this... Yes, Your Honor. I'm troubled. You say I can tell somebody, tell this travel agency, that this person is in the military and get a reduced fare, and that's not a misuse of their identification? It is not a use of the identification for the purposes of the aggravated identity theft statute, where that person is actually going to go ahead and be traveling. It's not as though... But he's not going to be traveling as a person who's in the military and entitled to the discount. Well, the person's... In other words, you're ripping off the air carriers. Admittedly, there's an issue there with regard to ripping off the air carrier, and in fact, that's what my client got a 70-month sentence for, for committing fraud. But with regard to the additional tack on it, an additional 24 months for aggravated identity theft, this is not aggravated identity theft, because it does not involve the use of someone's identity. The fact that the person was traveling, the person was traveling not as a member of the military in the same way that if someone said that I was a judge, I wouldn't be, when I get back on the plane today to fly back to Grand Rapids, I wouldn't be flying as a judge. I would be flying as a passenger, just like any other person. You would ask for a discount because you were entitled to a discount because you were a judge. But it wouldn't change the nature of what I was actually doing. Using the identity of Judge Moore to fly back to... Well, if I was using Judge Moore's identity, that would be an issue. But if someone, my travel agent, had represented to the airline that I was a judge, I would be traveling as Judge Nelson, I guess. Well, Judge Nelson. But if your travel agency was charged with using a false identification, then wouldn't that be a violation of this statute? No, Your Honor, because the fact that the travel agency lied about what I do, about the acts that I undertake as my occupation, is not a misuse of my identity. It's part of your identification, isn't it? Your Honor, I submit that it is not. It is not something that's inherent. It's no more so than saying that, for example, if a parent misrepresents to a particular school that their child is a baseball card collector because they know that the admissions person likes people who collect baseball cards. It doesn't change the fact... That's not part of the identity of the person. Your Sergeant Rock, for example, and that's your identification, Sergeant Rock. Your Honor, again, I guess my answer is, occupation is not an inherent part of who a person is. Like for example, their... It is if you're trying to get a military discount. Your Honor, I would say there, I agree. My client committed fraud, but it wasn't aggravated identity theft because it's not used under this statute in the same way that in the particular statute, or the particular issue with regard to Medlock, there were people who were Medicare beneficiaries. The only way that... Medicare and Medicaid beneficiaries, I think. The only way that the Medlock defendants could obtain reimbursement from the government was if those people were in fact Medicare beneficiaries. The claims were submitted on behalf of those individuals to get the Medicare payments for services that were not actually rendered. But the only way the claims could have been submitted is if the person had been a Medicare beneficiary in the first place, and this court, in Medlock, said that is not a use. You're saying that this case in front of us is exactly the same as Medlock? Your Honor, no. I wish I could say it was exactly the same as Medlock. That would... Make it easier. It would certainly make it easier. I probably would have... We probably would have prevailed in front of Judge Maloney. I think it's a slight step further than Medlock in terms of Medlock and Miller. Medlock is what the person, the defendants themselves didn't do. Miller is what they say somebody else did, and here it's what we're saying. Here is what my client said that her clients do for a living. So I think that it's not a 100% matchup, but I would say it is very, very close. The alternative I submit is in a situation, for example, where you have a sophisticated criminal organization, where someone is actually diligent about paying taxes, and the accountant submits the tax form at the bottom where you have to put your occupation, writes that the income as opposed to being an illegal drug dealer. They're misrepresenting the occupation of the person, but I don't think we would say that was aggravated identity theft that Congress was trying to address in this statute. I would direct this Court's attention to the Supreme Court's analysis in Flores-Figueroa because I think it is a very helpful discussion of what Congress's actual intended result was, and it's not this. who committed fraud involving several hundred thousand dollars, a 94-month sentence, when in the same district prosecuted by the same U.S. Attorney's Office, James Horton, who is in the Cyberco scam, which stole $100 million. It's 90 months because he doesn't have this 24-month aggravated identity theft enhancement. Was the sentence total within the statutory range allowed? The statutory range? So the 70 months, we can test, as you know, the analysis. Not looking at... Right. But assuming that the damage calculation was correct, yes, this fell within the 70 months. Under the statutory maximum. Right. The 70 months fell within the statutory maximum. After the 94 months fall within... What is the statutory maximum for the crime that you admit was proper? I don't know what the statutory maximum... What the range was for the charged offenses, excuse me, the convicted offenses with regard to fraud. The 24 months is a mandatory additional consecutive sentence. No more, no less is 24 months. Does it make any difference in favor of your client that the fraud had already been perpetrated and the use of the identities of the submission of the names was an effort by your client to cover up what she had done to perpetrate the fraud? Your Honor, I don't think it makes any difference under this statute with regard to whether it was done at the outset or whether it was done to provide supplemental follow-up documentation. It's the same lie. The lie is with regard to whether these people, their occupation was as service members. They weren't, and she said they were. We believe that under this Court's... To be consistent with this Court's decisions in Medlock and Miller, that the answer here should also be no. I see my time has expired. Thank you. May it please the Court, A.O.S.A. Hagan, Frank for the United States. Judge Moore, the answer to your question is that the statutory ceiling for the wire fraud alleged count in one was 240 months or 20 years because the indictment did not allege that it affected a financial institution. So it was a baseline wire fraud with a 20-year ceiling. Ms. White's position that this was simply a misrepresentation of the occupation of her clients, that doesn't stand up in the face of the record because as is alleged in count two, she used the noted means of identification, that is her client's names, to manufacture fake AFID cards, Armed Forces Identification Cards, to manufacture fake cards and then she sent those on to the travel agencies and the airlines trying to avoid having to repay wealth that she had stolen based upon misrepresentation about what they did when she first booked those tickets. Suppose she had not used the means of identification of these fake armed services cards, that it had only been the lie. Would she have been able to be prosecuted under this particular statute, 1028A? I don't think so, Your Honor, and that has to do with the nature of what an identification card is, of what an AFID card is. That is a personal identification document that service members carry that identifies them, not just who they are by name, but what they are by status and for the purposes of their identification as a member of the U.S. Armed Forces. Those are two things that combine. When I was in the Marine Corps, I wasn't just Hagan Frank. I was Captain Hagan Frank as far as the Marine Corps was concerned. So it's the nature of taking their names, putting them in a falsely manufactured document, a personal identification document, and then sending that on to the airlines because sending it on to the airlines and the travel agencies, she is necessarily implicitly representing that she's acting on their behalf because if those documents were genuine, they would have had to have come from the travelers, been given to her in order for her to pass them on to the airlines and the travel agencies in order to avoid those businesses coming after either her or her clients. Did the clients know that they were being portrayed as members of the Armed Forces? No, Your Honor. They were clueless. They were clueless. They were clueless. All they knew was that Sandy White could get them better rates than anybody else they went to. And she got those rates by lying about their status in addition to a bunch of other patterns of mendacity involving discount certificates and doctor's notes and things like that. But Your Honor, you hit it on the head. It's not just lying about, listen, this person is in the military, which would be functionally the same as the lie in Miller where he said, look, these three guys gave me authority to come in here as myself and act on behalf of the Fellowship. I'm not acting on their behalf. They just said that I could come in here as me and act on behalf of the Fellowship. Well, that's functionally the same thing as Sandy White calling up the airlines saying, hey, I've got these travelers. They're military. Can I get the really good military rate? It changes when she puts those means of identification into an identification document and then sends that on as part and parcel of what is a continuing fraud that went on for a dozen years. Wait a minute now. The man in Miller has signed the names of his cohorts without their permission. I don't believe he signed their names, Your Honor. He wrote their names down and said... He wrote them, signed them. He submitted them to the bank. Right. And that's pretty much, that's similar to what was done in Medlock. But I would describe Miller as invoking the names of these people saying they authorized me to come in here and act on behalf of the Fellowship. I think that's invoking the names. I think Medlock is citing names because all Medlock did was said, hey, these people here, they rode in my ambulance on stretchers. I'm not acting on their behalf. I'm just saying that they rode in my ambulance on stretchers and here are their names. So he's just citing their names. This is qualitatively different because in addition to putting them into personal identification documents, which is a significant thing, as I said, because if it's genuine, it has to have come, if it's my AFID card, it has to have come from me. And if I give it, when Sandy White sends it on to the airlines and the travel agencies, she is implicitly representing that she is acting on their behalf. Because they're going to be coming after somebody to get that money back. It's either going to be Sandy White or they can be looking at the traveler. Either way, the traveler is in a position of at least being under a cloud of suspicion because these documents are received by the travel agencies and the airlines. And admittedly, they were really silly. I mean, they were not very good counterfeit AFIDs. However, when they are received and they are now suspect and the airlines check with, I believe it was Army Criminal Investigations Division to run the names and it comes back that none of these people have ever served in the U.S. Armed Forces. There is a cloud of suspicion now over the travel agency, that is, excuse me, Sandy White and also over the travelers themselves. Can the travelers be held liable because they, but it's based on the fact that they did not know that they were being called military? No, you're not. Not criminally and not administratively. Not criminally because obviously they wouldn't have any provable intent. And as an aside, it's mentioned in the PSR that investigators checked with a couple of dozen of the passengers, the most frequent flyers, if you will, to ask them if they had any idea that they had been getting military rates and they all said no. So no, they're not going to be liable. And then, on the criminal side, and then on the administrative side, what the airlines do is they come after, when they realize that they've been defrauded and they calculate the loss and they issue these administrative debit or agency debit memos, ADMs. Those go to the host agency and it's on the host agency to either dispute the ADMs or to pay them. And in a case such as this, where the host agency, where the fares were sold by a subcontracted agent like Sandy White, then the host agency ultimately is liable to the airlines if they want to keep selling that airline inventory and they want to keep their ARC accreditation. But then the host agency can turn around, based upon whatever business relationship they have with the subagent, and go to the subagent and say, we just paid Lufthansa $200,000, you better come up with $200,000. Why isn't this just piling on if she's already been admitted to be criminally responsible under the fraud statute? Why isn't this just? Because there's a separate interest, I think, that 1028 big A recognizes, and that is in preserving the integrity of personally identifiable information, of means of identification. This is a digital age. A month doesn't go by where we don't see in the news about some big hack of PII, and that PII is highly monetizable, I think that's a word, is valuable, has economic value, and it can be exploited, and can be exploited in ways that harms people financially, it can harm them in terms of their reputations, and all those, even though these passengers were never going to be on the hook financially, it's reasonable to foresee that their reputations were potentially on the line. For instance, people who had done absolutely nothing wrong, they just went to get the best fare they could, here's the Secret Service knocking on their door, asking them questions about, hey, do you realize that your name is part of a criminal investigation? So I don't think it's piling on because of the separate interest that is protected by the aggravated identity theft statute, and it basically recognizes the fact that, look, there's lots of ways to steal money, and there's lots of ways to steal money that will get you, bring you within the reach of Title 18, but if one of the ways you're stealing money that brings you within the reach of Title 18 involves other people's personal identifiable information, then that's going to raise the stakes. Right, but White used the personally identifiable information in the original lie, saying that her client, John Jones, is a member of the military. So, theoretically, all she's doing for this provision, 1028 Cap A, is saying, oh, here's the verification, which is this made-up piece of plastic or whatever that shows, that verifies what she already said, which of course is a lie to start with. That's right, but the problem for her is that in doing that, she crossed the line that this was set in Miller, and that it stated in Medlock that that rationale remains pervasive. She crossed the line of using the PII in a way that involved her purporting to act on behalf of the people that that PII relates to. That's the difference. She crossed the line when she manufactured those identification documents and then sent those purportedly genuine personal identification documents on to the host agencies and the airlines. So, she was acting, she was purporting to act on their behalf before when she was lying about them being in the military, but the difference is she's using a PII is what you're saying here. Well, I think when she initially did it, yes, she was acting, purporting to act on their behalf. She was doing something for them, but she wasn't. She was saving them money in an illegal way and defrauding the airlines. She was saving them money, and she was getting her service fees, and she was building and maintaining this client base. She was making money too, that's the whole reason why. But the difference is that she was acting on their behalf, but when she sent those fake identification documents in, then she was purporting to act on their behalf because they did go to her and say, get me a good fare. And they didn't know what magic she worked on the keyboard to get the good fare. All they knew was that she was a killer at getting really the best rates anywhere. So they didn't know about that, but they did say, get me the best airfare, and she did it. But when she takes that next big step that steps across the Miller line of creating the fake document and then sending it on, then she is purporting to act on their behalf, and they had no idea that she was doing this. But that's true before she used the fake document. She says on the telephone to the airline, I have John Jones here, and he's in the military. What's the best fare you can give me? And the airline says, here it is, it's real low. Right, but then that's the Miller scenario, and the Medlock scenario, I think, of just lying about what other people have done or lying about what I did for other people or lying about, in that case, at that point in the scheme, or lying about their status as members of the armed forces. However, once a fraud has been discovered and is now being pursued by the airlines, and she creates those documents. So is that the key, that the documents are created after the fraud was discovered? What if they've been created at the time to facilitate the fraud? I think it would be the same result that we have in this case, because then again, it's not just telling a lie about what someone does. It's producing a document that if it's genuine, you are representing. If you are the airlines, and I'm Sandy White, and I give you a fake military ID for Mr. Nelson, then I'm representing to you, that I'm acting on his behalf. He gave me this fake ID. Here it is. Give him this good rate. I think that's a qualitative distinction from simply me telling you. Simply saying that he's military. Just saying, Mr. Nelson's in the military, give him the good rate. That's a Miller. That's a Medlock. Lying about what people. Why isn't it just facilitating her proof, Sandy White's proof, that this hypothetical client, John Jones, is a member of the military? Well, it is that, but it's not just that. The reason it's not just that is because in Miller, this court said, if you impersonate, pass yourself off as, which is the traditional sort of identity theft, or act on behalf of, if you use that means of identification to act on behalf of them, then that makes out the offense. It's really the same thing if we take it out of this context and just consider traditional credit card fraud. I get Mr. Nelson's credit card number, and I go online and I start using it, or I encode it on a piece of plastic, and I go to Meijer and I start buying up gift cards. I'm representing one of two things. I'm representing that I am Mr. Nelson, or I'm representing that I'm acting on his behalf. He said- I could use it? I could use it. There would be no question in anybody's mind that that conduct on my part, with his credit account number, constituted aggravated identity theft, if the wire, the interstate wire nexus- So that would be using a means of identification under 1028A? It would. It would, and I prosecute those cases a lot. So the distinction here is, it's not just lying about status. It's that she took the extra step of creating the fake document and then sending it on, and if that document were genuine, it would have had to have come from the customer. And the legislative, the harms that 1028 are meant to address, which includes reputational damage, are alive and well in this case. I've got zero time. Great. Thank you. Further questions? Thank you. I'm glad I went from being a part of the scheme to being a victim of the scheme. We accused you of being a Marine, which is worse than anything I can think of. If you look at me, you can tell that I certainly haven't been a Marine either, unfortunately. I think that Brother Counsel's concessions with regard to the fact that had there not been identification cards made, that this would be in lockstep with Miller and Medlock is exactly the point I was trying to make before. And that is, and so then the question becomes, is the fact of making the identification card somehow turn this into aggravated identity theft? And I don't see any basis in the statute for saying that if you say on the one hand that someone has the occupation of being in the service, and you say that in a writing, that it's any different for the purposes of this statute than saying that along with a laughable picture of them with the service name connected with it. But the language uses a means of identification does, at least superficially, seem to say using a credit card, using a driver's license. I'm not sure whether it has to be a fake one or one that you've misappropriated in some way. And that was the issue that this Court addressed first in Miller in saying there are multiple interpretations here that are reasonable. I believe Judge Clay, I think you were on both of these panels, that the decision there said boy, if you take the dictionary interpretation, this is use. But if you look at it in context and you look at it in the context of the other words in the statute and the seemingly general intent of the statute, then it seemingly should have a more limited reason. And because of the rule of lenity, we're then going to give it the more limited reasoning. So I believe that's law in this circuit already. That's why I think opposing counsel conceded that just the mere use of the name, which is the identifying information here, and then the lie about that name isn't used for the purpose of the statute. And furthermore, I want to address this idea that this is about personally identifiable information and these people are under a cloud of suspicion. The Supreme Court in Flores-Figueroa made very clear what Congress's concern was here, and it was the classic identity theft. It was about dumpster diving and data hacks and the like, not about misrepresenting what someone's occupation is. And it wasn't to protect them from the inconvenience, and frankly, it's a significant inconvenience of having to deal with law enforcement in the course of an investigation. But it's also very clear here that these customers were not at personal financial risk here, and I believe Brother Counsel acknowledged that as well. Unless the Court has further questions, my time has expired. Thank you both for your argument. An interesting case, and the case will be submitted. Would the clerk call the next case?